## MENTE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7593.

Circuit Court of Appeals, Fifth Circuit.

April 22, 1935.

Irving R. Saal, of New Orleans, La., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., Louise Foster, Sewall Key, and Norman D. Keller, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Hartford Allen, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

Each of the petitioners sought a redetermination of a deficiency of income tax for the year 1928 determined by the Commissioner of Internal Revenue, which determination was based upon the receipt by the taxpayer of part of a sum, with interest thereon, paid by the government in refund of income taxes overpaid by Mente & Co., Inc., a Louisiana corporation, for years prior to April 1, 1925. The proceedings under the several petitions were consolidated and the cases were heard and decided together by the Board of Tax Appeals. In that hearing the petitioners, who were stockholders of that corporation prior to the hereinafter mentioned reorganization, contended that the distributions made to them of said tax refund and interest must be regarded as returns of capital, and therefore not a part of their taxable incomes. The Board of Tax Appeals sustained the above-mentioned action of the Commissioner, deciding that the amounts so paid to the petitioners should be treated as belated dividends to stockholders of said corporation made in liquidation of a residue of the assets of the corporation, and that, because of the absence of proof that at the time said distribution was made the peti-

tioners had any unreturned part of their investment in said corporation's stock, the petitioners failed to prove that such payments made to them represented returns of capital. That decision is before us on a petition for review.

On June 2, 1925, the stockholders and directors of Mente & Co., Inc., which was incorporated in March, 1919 (hereinafter referred to as the old Mente & Co.), authorized the president of the corporation, Isaac T. Rhea (one of the petitioners), to arrange and close a contract for the reorganization and refinancing of the corporation. Pursuant to that authority, Rhea, acting for himself and other stockholders, entered into a contract dated July 1, 1925, with two firms for the reorganization and refinancing of the corporation, that contract being in the form of a letter addressed by Rhea to the two firms, which was signed by Rhea and was approved and accepted by the two firms. The reorganization provided for involved the acquisition of additional capital by sale of securities. Pursuant to that contract the name of old Mente & Co. was changed to Burlap Manufacturing Company, Inc., and on August 6, 1925, the stockholders of Burlap Manufacturing Company, Inc., exchanged their stock for common and preferred stock and gold debenture bonds of a new corporation which was then organized under the name of Mente & Co., Inc., which is hereinafter referred to as the new Mente & Co. The contract provided for the new Mente & Co. issuing described shares of common and preferred stock and debenture bonds, and for said two firms purchasing some of the securities provided for. The contract in the fifteenth paragraph thereof, provided for Rhea, in consideration for such purchase, entering into a contract with the new Mente & Co. to indemnify and save harmless the old Mente & Co. and/or the new Mente & Co. from "any claim or claims, liability or liabilities, cause or causes of action arising out of, caused by or in any way connected with any claim or claims for Federal taxes accruing or which may have accrued against" the old Mente & Co. and/or the new Mente & Co. prior to April 1, 1925, in excess of the amounts heretofore set up on the books of the old Mente & Co. as a reserve to provide for such taxes. In consideration of this indemnity agreement, the contract, in the fifteenth paragraph thereof, provided that Rhea should be entitled to receive, when and as paid by the federal government, any and all sums which

may be refunded and which the old Mente & Co. and/or the new Mente & Co. otherwise would be entitled to receive on account of federal taxes for any period or periods prior to April 1, 1925. A stipulation of facts was entered into by the parties. The following was paragraph IV of that stipulation: "On the same date, August 6, 1925, the new Mente & Co., Inc., took over as of April 1, 1925, (unless under the language of the Fifteenth paragraph of the agreement of July 1, 1925, set forth in paragraph VII of this stipulation and/or the agreement of October 25, 1927, set forth in paragraph X of this stipulation, it be that some part of the assets did not pass to the new Mente & Co., Inc.), all of the property, and assets, real, personal and mixed including real estate, buildings, improvements, machinery, supplies, merchandise, cash on hand and in bank, accounts and bills receivable, business, good-will, and everything whatsoever of every nature, sort and kind wheresoever situated belonging to the Burlap Company, Inc., whether specially enumerated or not, in consideration of the assumption by the new Mente & Co., Inc., of all debts and obligations of the said Burlap Manufacturing Company, Inc., and/or its liquidators and the cancellation of the issued and outstanding capital stock of the said Burlap Manufacturing Company, Inc." It appears from that stipulation as it is set out in the record that the part of paragraph IV which is in parenthesis was by a footnote directed to be inserted. Paragraph X of that stipulation sets out an agreement entered into between I. T. Rhea and the new Mente & Co. on October 25, 1927, which, after reciting that, through inadvertence, the agreement provided for in paragraph fifteenth of the above-mentioned contract had not been executed as therein provided, and that the parties had agreed upon the proper interpretation of said paragraph fifteenth, provided:

"1. Rhea agrees that he will, on demand, indemnify and save harmless said former Mente & Co. Inc. and/or the Company from any claim or claims, liability or liabilities, cause or causes of action, arising out of, caused by, or in any way connected with any claim or claims for Federal taxes accruing or which may have accrued against said former Mente & Co., Inc., and/or the Company prior to April 1, 1925, in excess of the amounts set up on the books of said former Mente & Co., Inc., prior to July 1, 1925, as a reserve to provide for such taxes.

"2. In consideration of such agreement, the Company agrees that said Rhea shall be entitled to receive, when and as paid by the Federal Government any and all sums which have been or may be refunded, and which said former Mente & Co., Inc., and/or the Company otherwise would be entitled to hold or receive on account of Federal taxes for any period or periods prior to April 1, 1925, together with the amount by which said reserve on the books of said former Mente & Co., Inc., exceeds all taxes finally found to be due for all periods prior to April 1, 1925."

On September 12, 1927, the Treasury Department of the United States issued checks, payable to "Mente & Co. Inc.," for a total sum of $154,349.99, which checks represented a refund of federal income and profits taxes in the amount of $109,174.91 paid by the old Mente & Co., in prior years, and interest thereon of $45,210.08. The new Mente & Co. received those checks, indorsed them, collected the amounts thereof, and credited the proceeds to an account opened on its books under the caption "I. T. Rhea, Trustee, stockholders old corporation." In the early part of the year 1928, the new Mente & Co. paid to Rhea the sum so credited to him, plus $1,949.43 interest thereon; and Rhea, after making deductions for costs of accountants' and attorneys' fees connected with the collection of the refund payments, distributed the net balance among the stockholders of Burlap Manufacturing Company, Inc., in proportion of their respective stockholdings on August 6, 1925, and without regard to their holdings of stock in the new Mente & Co., which were relatively different. The amount received by each of the petitioners in the just-mentioned distribution was a fraction more than $11 per share of the stock which he held in the Burlap Manufacturing Company, Inc., on August 6, 1925. It was stipulated that the stock of the Burlap Manufacturing Company, Inc., owned by the petitioners, immediately prior to the transaction and transfers on August 6, 1925, had cost them in excess of $50 per share; and that at the close of its fiscal year ended March 31, 1925, the old Mente & Co., and at August 6, 1925, the Burlap Manufacturing Company, Inc., had earned surplus and undivided profits in excess of $500,000.

Counsel for the petitioners contended that the right to the amount refunded was transferred to the new Mente & Co. as part of the consideration for petitioners' stock in the Burlap Manufacturing Company, Inc., in exchange for which stock and debenture bonds of the new Mente & Co. were issued to petitioners; that the distribution to petitioners of the amount refunded, with interest added, less stated expenses, was a payment by the new Mente & Co. of part of the consideration due to petitioners for their stock transferred to that company; and that the amounts distributed, being greatly less per share than the cost per share of the stock transferred by the petitioners, should be regarded as nontaxable returns of capital to the petitioners. In our opinion, the just-stated contentions are not sustainable.

It plainly appears from the above-mentioned provision of paragraph fifteenth of the contract in pursuance of which the corporate reorganization was effected that any liability in any way connected with any claim or claims for federal taxes accruing or which may have accrued against the old Mente & Co. and/or the new Mente & Co. prior to April 1, 1925, in excess of the amounts heretofore set up on the books of the old Mente & Co. as the reserve to provide for such taxes, was not a liability which the new Mente & Co. was to take care of or discharge, and that the right to sums refunded on account of federal taxes for any period prior to April 1, 1925, was an asset in which the new Mente & Co. had no beneficial interest. The right to sums so refunded was as effectually excluded from the assets of the old Mente & Co. which the new Mente & Co. was to and did acquire beneficially as if that right had been transferred by the Burlap Manufacturing Company to a third party, in trust for the holders of stock of that company. The language of paragraph IV of the stipulation negatives the conclusion that the parties admitted that the right to the sums refunded was included in the assets transferred to the new Mente & Co. for its own benefit. The acts of the new Mente & Co. in crediting the amount of the proceeds of the refund checks to an account under the caption "I. T. Rhea, Trustee, Stockholders Corporation," and in paying to Rhea that amount, with interest thereon added, evidenced its recognition of the fact that it had no beneficial interest in the money refunded. The agreement set out in paragraph X of the stipulation was made in compliance with an obligation which, at the time the corporate reorganization was effected, Rhea, in behalf of himself and the other

stockholders of the old Mente & Co., was obligated to the new Mente & Co. to make. The effect of what occurred was that in the corporate reorganization the stockholders of the old Mente & Co., or that company for its stockholders, reserved or retained the right to receive, when and as paid by the federal government, any and all sums refunded on account of federal taxes for any period prior to April 1, 1925, which but for such reservation or retention, the new Mente & Co. would have been entitled to receive. The right to sums so refunded was an asset which did not enter into the corporate reorganization which was provided for by contract and was consummated pursuant to that contract.

■ Under the contract in pursuance of which the corporate reorganization was effected, the several stockholders of the old Mente & Co. were to receive for their stock stock and debenture bonds of the new Mente & Co., and also their pro rata shares of any sums refunded on account of federal taxes of the old Mente & Co. for any period prior to April 1, 1925. The amounts paid to the petitioners by Rhea were dividends under the definition contained in section 115 (a) of the Revenue Act of 1928 (26 USCA § 2115 (a); art. 625, Treasury Regulations 74); and, under subdivision (c) of that section, those amounts, together with the stock and debenture bonds of the new Mente & Co. received for their stock by the stockholders of the old Mente & Co., are to be treated as full payment in exchange for the last-mentioned stock. As the property received in exchange for the old Mente & Co. stock consisted not only of stock or securities (stock and debenture bonds of the new Mente & Co.) permitted to be received without recognition of gain, but also of other money or property (the net amount of the refund), under section 112 (c) (1) of that Act (26 USCA § 2112 (c) (1), the gain, if any, to the recipient is required to be recognized. The distribution by Rhea of the net amount of the refund completed the liquidation of the assets and business of the old Mente & Co. The amounts so distributed should be treated as payments in exchange for stock, and any gain realized thereby should be taxed to the stockholders of the old Mente & Co. "as other gains or profits." Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379.

■ Those amounts, having been distributed in complete liquidation of the old Mente & Co., were liquidating dividends. subject to be taxed against the petitioners severally, unless what the petitioners, prior to that distribution, severally had received for their stock in the old Mente & Co. was of a value less than the cost to them of their last-mentioned stock. The challenged determination of the Commissioner was prima facie correct. The burden was on the petitioners to establish the incorrectness of that determination. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Helvering v. Taylor, 293 U. S. 507, 515, 55 S. Ct. 287, 79 L. Ed. ——; Smith Real Estate Co. v. Page (C. C. A.) 67 F.(2d) 462. That burden was not carried. It does not appear from the record that petitioners attempted to prove that the stock and debenture bonds of the new Mente & Co. received by the petitioners for their stock in the old Mente & Co. under its changed name was less than the cost to the petitioners of the last-mentioned stock. So far as appears, there was no evidence before the Board of Tax Appeals of the value, at the time the exchange of corporate securities occurred, of the stock and debenture bonds of the new Mente & Co. received by the petitioners for their stock in the old Mente & Co. There was no evidence to support a finding that the distribution of the net amount of the refund constituted returns to the petitioners of capital which had not already been fully made good to them, rather than liquidating dividends the amount of which was realized from an asset of the old Mente & Co. remaining after its stockholders in a corporate reorganization had received for their stock property which was worth as much or more than that stock had cost them. In the stated condition of the evidence, the complained of action of the Board of Tax Appeals is not subject to be set aside or reversed.

The petition is denied.